IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FERMON STEWART CHEATHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF TALLASSEE, and TALLASSEE | ) | |
| POLICE DEPARTMENT, and | ) | CIVIL ACTION NO. 2:11-cv-672-WHA |
| TALLASSEE CHIEF OF POLICE, JAMES | ) | (WO) |
| RODGERS, in his official and individual | ) | |
| capacities, OFFICER J.L. REDD, in his official | ) | |
| and individual capacities, and OFFICER | ) | |
| DOUG WALTERS, in his official and | ) | |
| individual capacities, and OFFICER C. S. | ) | |
| HOWARD, in his official and individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

This case is before the court on two Motions for Summary Judgment and a Motion to

Strike (Doc. # 49).  The first summary judgment motion was filed by Defendants City of

Tallassee ("City"), City of Tallassee Police Department, City of Tallassee Chief of Police James

Rodgers ("Rodgers"), Officer Doug Walters ("Walters"), and Officer Chris Howard ("Howard"),

on July 5, 2012 (Doc. # 31).  The second summary judgment motion was filed by Defendant J.L.

Redd ("Redd") on July 5, 2012 (Doc. # 37).  The Plaintiff, Fermon Stewart Cheatham

("Cheatham"), filed a Complaint on August 19, 2011 (Doc. # 1), alleging nine causes of action[1]:

---

[1] Each count contains prayers for relief asking for judgment against all Defendants
regardless of which defendant's behavior actually serves as the basis of the particular count.  The

Count I – general allegations of civil rights violations brought pursuant to 42 U.S.C. § 1983 against Redd; Count II – an excessive force claim brought pursuant to 42 U.S.C. § 1983 against Redd; Count III – a departmental liability claim brought pursuant to 42 U.S.C. § 1983 against the City, Police Department, and Rodgers; Count IV – a state law assault claim brought against the City, Police Department, Rodgers, and Redd; Count V – a state law battery claim brought against the City, Police Department, Rodgers, and Redd; Count VI – a state law outrageous conduct claim brought against the City, Police Department, Rodgers, and Redd; Count V[2] – a state law civil conspiracy claim brought against all Defendants; Count VII – a negligence claim brought against all Defendants; and Count VIII – a negligent infliction of emotional distress claim brought against all Defendants.  Cheatham filed a Response to the Defendants' Motions for Summary Judgment (Doc. # 40)[3] on July 25, 2012, which was essentially a reformatted copy of his Complaint.  The Defendants filed Replies to Cheatham's Response on August 1, 2012 (Doc. # 47) and on August 2, 2012 (Doc. # 48).

The court has federal question subject matter jurisdiction over the federal claims and supplemental jurisdiction over Cheatham's assault, battery, outrage, civil conspiracy, negligence, and negligent infliction of emotional distress claims.  *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367.

---

court will assume that each count is brought only against those individuals whose conduct forms the basis of the count.

[2] Cheatham appears to have misnumbered some of the counts from his Complaint.  The court will utilize the same numbering scheme as Cheatham for the sake of consistency and clarity.

[3] Although there were two motions for summary judgment filed by the Defendants in this case, Cheatham only filed one brief in response.  The court will assume that Cheatham intended for his Response Brief to apply to both pending motions for summary judgment.

For the reasons to be discussed, Redd's Motion for Summary Judgment is due to be GRANTED in part and DENIED in part, and the Defendants City, Tallassee Police Department, Rodgers, Walters, and Howard's Motion for Summary Judgment is due to be GRANTED in full.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine dispute for trial.  *Id.* at 324.

Both the party "asserting that a fact cannot be" and a party asserting that a fact is genuinely disputed must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must

be believed and all justifiable inferences drawn in its favor.  *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court

shall grant summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### III.  <u>FACTS</u>

The following is an account of the relevant facts with all justifiable inferences drawn in

favor of Cheatham[4]:

On April 25, 2010, an anonymous informant notified the Tallassee Police Department

that a possibly intoxicated driver was in the downtown Tallassee area operating a Toyota pickup

truck.  Redd, a Tallassee Police Department officer, who was accompanied by his civilian

brother-in-law for a ride-along, was on patrol in that area, and shortly after receiving the report

about the potentially intoxicated driver, Redd observed a truck matching the description he had

been given.  After following the truck for a short distance, Redd observed the driver of the truck

fail to use his turn signal before making a turn.  Redd followed the truck to a nearby residence

located at 201 2nd Street in Tallassee, Alabama.  Once there, the driver stopped the truck and got

---

[4] Because Cheatham's Response Brief largely failed to comply with the court's
instructions to cite to specific evidence in the record (Doc. # 36), the court draws these
undisputed facts almost exclusively from the Defendants' briefs in support of the Motions for
Summary Judgment.  Cheatham did not remedy this deficiency in his Response to Redd's Motion
to Strike (Doc. # 51), but the court allowed Cheatham to file a Supplemental Response (Doc. #
53) with specific citations to the record.  Thus, the court incorporates the disputed facts from
Cheatham's Supplemental Response to Redd's Motion to Strike and from the portions of
Cheatham's affidavit submitted with his Response Brief that are not due to be stricken, as
explained below.

out.  Redd has testified that he saw Cheatham exit the driver's side door of the truck; however, Cheatham has testified that he was in fact not driving due to his intoxicated state.  Cheatham's girlfriend has confirmed Cheatham's story by explaining that she was actually driving on April 25, 2010.  Two other individuals at the residence, Cheatham's ex-wife and Cheatham's son, have provided contradictory testimony.  Cheatham's son has testified that he saw Cheatham's girlfriend in the passenger seat of the truck, and Cheatham's ex-wife testified that she saw Cheatham driving when he arrived at her residence located on 201 2nd Street.  It is undisputed, however, that Cheatham pled guilty to driving under the influence related to this event and did not appeal his conviction.

Cheatham does not dispute that he had consumed a substantial amount of alcohol on April 25, 2010, and also that he continued consuming alcohol on the drive over to his ex-wife's residence.  Once at the residence, Cheatham approached his son and spoke to him.  Shortly thereafter, Cheatham walked to the back of the residence to retrieve some fencing wire.  It was not until Cheatham returned from the back of the residence with the wire that he noticed Redd's police car parked in the driveway.  Redd testified that when he arrived at the residence, he waited in his patrol car in order to run the truck's license plate number.  After he had run Cheatham's license plate, Redd exited his patrol car and watched as Cheatham walked back to his truck. Redd noticed that Cheatham's movement was unsteady and that he smelled of alcohol.

Redd approached Cheatham and asked him who was operating the truck, but Cheatham's girlfriend exited the truck and told the officer that she had been driving the truck.  At this time,

5

Redd called for assistance because of the number of people[5] at the scene. After calling for assistance, he approached Cheatham in order to detain and question him. Redd asked Cheatham if he was carrying any weapons, and Cheatham answered in the affirmative and handed over a pistol and a knife without incident. Redd then handcuffed Cheatham and began to lead him back to the patrol car so that Cheatham would not have to perform the field sobriety test on grass.

Once Redd had taken Cheatham back to his patrol car, he offered to perform a field sobriety test. Cheatham refused. Redd then put Cheatham under arrest for driving under the influence of alcohol and possession of a concealed weapon. According to Cheatham, Redd next pushed him to the ground[6] and stood over Cheatham, kicking or striking him in the face, mouth, and throat. This caused extensive damage to Cheatham's face, including the loss of some of his teeth. According to Redd, when they arrived at the patrol car, he began to frisk Cheatham's boots. While Redd was occupied, Cheatham pulled a pocket knife from his back pocket and began to open it. Redd saw this act and began to struggle with Cheatham over the knife. The two men fell to the concrete. During the fall, Redd was above Cheatham, and he landed on Cheatham's face, driving it into the concrete. Cheatham denies pulling a knife while in handcuffs, and he maintains that Redd attacked him with no provocation.

---

[5] In addition to Cheatham and his girlfriend, members of Cheatham's family, including his ex-wife and his son, were also at the residence.

[6] During his deposition Cheatham stated that the fall to the ground "happened so fast" that he "couldn't even keep up with it." Cheatham Dep. 114:16–114:17. He testified at separate intervals that "a huge weight"caused him to fall down, that it was "almost like [Redd] pushed me down," and finally that "Redd pushed me down." *Id.* at 114:18–114:20; 116:23. However, Cheatham consistently maintained that once on the ground, Redd kicked or punched him in the throat.

Defendant Walters, another Tallassee Police Department officer, who had arrived on the scene in response to Redd's call for assistance, was questioning the other family members at the scene and did not see the struggle occur.  Walters did not become aware that the two men were struggling until Redd called to him for aid.  Moreover, Cheatham has testified that he is not aware of any wrongful conduct on behalf of Walters.

After Cheatham was subdued, he was placed in the patrol car and was taken to the police station.  He has testified that he initially refused medical treatment from paramedics despite the extensive damage to his face.  However, because of the paramedics' recommendation, Cheatham was transported to the hospital for treatment.  After Cheatham was released, he was taken back to the police station.  At the station, Cheatham changed into a jail uniform, and Defendant, Officer Howard, who had been taking a blood sample from Cheatham, found a bag of marijuana in Cheatham's boot.

Cheatham was charged with and convicted in municipal court of possession of marijuana, driving while under the influence of alcohol, failure to use a turn signal, driving with a revoked driver's license, and carrying a concealed firearm.  Cheatham did not appeal any of the five convictions.

## IV.  DISCUSSION

### 1. Motion to Strike

Defendant Redd filed a Motion to Strike Cheatham's affidavit (Doc. # 40-1) which was filed in support of his opposition to the pending Motions for Summary Judgment.  Redd raises multiple arguments in support of his Motion to Strike.  Redd argues that Cheatham lacks personal knowledge of the facts in his affidavit, that the affidavit contains speculation, that the

affidavit contains inadmissible hearsay, and, most important, that the affidavit directly contradicts earlier sworn deposition testimony from Cheatham.  Where statements in the affidavit directly contradict Cheatham's deposition, those statements cannot serve to create a genuine dispute of material fact.  However, where the affidavit is not inherently inconsistent with Cheatham's deposition testimony, those statements will be considered on summary judgment.

The Eleventh Circuit has explained that courts "may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003).  Similarly, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  "Such an affidavit would be a sham."  *McCormick*, 333 F.3d at 1240 n.7.

However, courts "apply this rule sparingly because of the harsh effect [it] may have on a party's case."  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987).  To disregard every variation in a party's testimony as a sham "would deprive the trier of fact of the traditional opportunity" to make credibility determinations.  *Id.*  Thus, "our cases require the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."  *Id.*  "If no inherent inconsistency exists, the general rule [allows] an affidavit to create a genuine issue even if it conflicts with earlier testimony in the party's deposition."  *Id.* (internal citation omitted).

Of the facts presented in Cheatham's affidavit, only two are material to the claims he has alleged.  First, in Cheatham's deposition he explains that the Tallassee police officers made him see paramedics because of the injuries he sustained during his fall to the ground.  Cheatham Dep. 123:21–124:20.  However, in his affidavit, Cheatham testifies that "I told the officers I needed to go to the emergency room, but they refused to take me at first, but when I would not stop bleeding they finally agreed to take me to Tallassee Community Hospital."  (Doc. # 40-1 at 2).  This portion of Cheatham's affidavit testimony is due to be stricken because it directly contradicts his deposition testimony.  Cheatham's affidavit attempts to create an dispute of fact about the policies used by Tallassee in dealing with individuals with injuries who are in custody, but his position is "inherently inconsistent" with his previous deposition testimony.  Therefore, the portions of Cheatham's affidavit concerning his medical treatment are hereby stricken.

The second instance material to Cheatham's claims stems from the events surrounding the struggle between Redd and Cheatham. In his affidavit, Cheatham testifies that there were multiple officers around him and that one of them threw him to the asphalt, and then he was either kicked or punched in the throat by one of the officers.  *Id.*  Cheatham's deposition testimony gives a less definite account: he first testifies that he did not have any independent recollection of Redd, or anyone else, pushing him to the ground.  Cheatham Dep. 110:16–111:6. Later in his deposition, Cheatham states that "it happened so fast . . . I couldn't even keep up with it."  *Id.* at 114:16–114:17.  However, Cheatham next testifies that, although he does not know whether Officer Redd was kicking or hitting him, he was "doing something" that caused Cheatham to lose teeth.  *Id.* at 114:23–115:3.  Next, Cheatham definitively states that Redd pushed him to the ground and began punching or kicking him.  *Id.* at 116:23–117:19.

9

Although these accounts vary, the contradictions between Cheatham's affidavit and his deposition do not rise to the level of "inherent inconsistency" needed to strike Cheatham's affidavit testimony. *See Rollins*, 833 F.2d at 1530. Cheatham's answers to deposition questions about the arrest are not "clear answers to unambiguous questions," which are required in this circuit to disregard an affidavit as a sham. *See Van T. Junkins & Assocs., Inc.*, 736 F.2d at 657. To make such a determination at the summary judgment stage would usurp the role of the trier of fact to resolve credibility issues. Furthermore, Redd's other arguments—that Cheatham lacks personal knowledge of the facts in his affidavit, that the affidavit contains speculation, and that the affidavit contains inadmissible hearsay—do not apply to these statements. Therefore, the court will consider the portion of Cheatham's affidavit concerning the events immediately surrounding his arrest in ruling on the Defendants' Motions for Summary Judgment.

As to the remainder of Cheatham's affidavit, any other statements are not material to Cheatham's claims. Thus, the motion to strike is due to be denied as moot regarding those portions.

The court also notes that Cheatham supplied the court with evidentiary submissions, in addition to his affidavit, when he filed his Response Brief. However, Cheatham failed to specifically designate any portion of those documents related to any material issues. Therefore, he has failed to follow the instructions set out in the court's July 5, 2012 Order (Doc. # 36) and July 9, 2012 Order (Doc. # 39). The court ordered that "[n]o parts of documents not so specifically designated will be considered." (Doc. # 36 at 1); (Doc. # 39 at 1). It is not the court's role to go through documents in search for support of a party's case. Cheatham has been given multiple opportunities to submit specific evidence upon which he seeks to rely. Therefore, the

court will disregard all of the Plaintiff's evidentiary submissions which fail to adhere to the court's orders.

### 2. Motions for Summary Judgment

In order to create a genuine dispute of material fact, Cheatham must not rely on "mere conclusions and unsupported factual allegations [as they] are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir.1989)). As explained above, Cheatham's Response Brief is simply a reformatted version of his Complaint, devoid of any citations to the record concerning any material facts. The court ordered Cheatham to supplement his response to Redd's Motion to Strike, as his first response similarly did not contain any citations to the record. After granting in part Redd's Motion to Strike Cheatham's affidavit, the court has considered the small amount of evidence Cheatham successfully cited in opposition to the Defendants' Motions for Summary Judgment and Redd's Motion to Strike. For reasons to be discussed below, the court concludes that Cheatham has created a genuine dispute of material fact as to some of his claims against Redd, but not against the other Defendants.

The court will now consider the Defendants' legal arguments in light of the evidence properly before the court.

### A. All Claims as to Tallassee Police Department

The Defendants contend that in each count of the Complaint, Cheatham seeks damages from each named defendant. The Defendants argue that the Tallassee Police Department is due summary judgment in its favor to whatever extent the Complaint seeks damages or redress from

it because the Tallassee Police Department is not a proper legal entity capable of being sued.  *See Dean v. Barber*, 951 F.2d 1210, 1214–15 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit."); *see also Hawkins v. City of Greenville*, 101 F. Supp. 2d 1356, 1363 (M.D. Ala. 2000).  The court agrees, and accordingly, Tallassee Police Department is due summary judgment in its favor as to all claims brought against it.

### B. Counts I and II – Violation of Constitutional Rights

#### i. As to Redd

Plaintiff's Count I alleges a 42 U.S.C. § 1983 claim based on an unreasonable search and seizure, denial of due process, and excessive force against Redd, and Count II raises a § 1983 excessive force claim against Redd.  Redd has asserted qualified immunity as to both claims.

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).  As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred.  *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).  Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then

determine "whether the right was clearly established." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (internal citation omitted).

Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997).  In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their conduct violates clearly established law.  First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, *even in the total absence of case law*."  *Id*. at 1350 (emphasis in original).  The Eleventh Circuit considers a case in this category an "obvious clarity case."  *Id.* at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statue on its face, the court must turn its attention to case law that espouses "broad statements of principle . . . [that] are not tied to particularized facts."  *Id.*  at 1351.  In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual situation.  *Id.*  "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the violation"; thus, these decisions can "clearly establish law applicable in the future to different sets of detailed facts."  *Id.*

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case. *Id.* With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances."[7] *Id.* If the circumstances facing the official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted. *Id.* at 1352.

In this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or when relevant the highest court of the state where the case arose. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

In the present case, it is clear that Redd was acting within his discretionary function in arresting Cheatham. His actions were "carried out in the performance of his normal job duties" and were "within the authority delegated to him" as a police officer. *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Because Redd's allegedly illegal acts, "if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [his] discretionary duties," Redd satisfies the preliminary inquiry of the qualified immunity analysis. *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Thus, the burden shifts to Cheatham to show that Redd violated a clearly established constitutional right.

It is unclear, based on Cheatham's Complaint and Response Brief, in what ways Redd engaged in an illegal search and seizure during the April 25, 2010 arrest, but it is clear that "[t]he Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the

---

[7] The Eleventh Circuit noted that most case law will fall into this third category. *Vinyard*, 311 F.3d at 1351–52.

right to be free from arrest without probable cause." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)) (internal marks and citations omitted). It is also clear that an officer need only demonstrate that he had arguable probable cause in order to receive qualified immunity for an alleged unlawful arrest. *See Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). "Arguable probable cause exists when 'an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.'" *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)).

In order for Cheatham to defeat Redd's claim of qualified immunity, he needed to present evidence that would create a genuine dispute of material fact as to whether Redd had arguable probable cause to arrest him on April 25, 2010. However, the evidence before the court is that Redd observed Cheatham's vehicle perform a traffic infraction, observed Cheatham near the vehicle while smelling of alcohol, and observed Cheatham's unsteady walk. All of this evidence is certainly enough to constitute, at least, arguable probable cause that Cheatham had been driving under the influence of alcohol. Because Redd had, at least, arguable probable cause to suspect that Cheatham had been operating his vehicle while under the influence of alcohol, Cheatham cannot establish that Redd violated his Fourth Amendment right to be free from illegal searches and seizures by being arrested on April 25, 2010. Therefore, Cheatham has failed to meet his burden as to Redd's assertion of qualified immunity as to this aspect, and Redd is due summary judgment as to Cheatham's illegal search and seizure claim based on the arrest itself.

15

As to Cheatham's excessive force claims against Redd, it is clear that "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).  The main question for the court in determining if Redd's use of force was excessive is whether Redd "behaved reasonably in the light of the circumstances before him." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1244 (11th Cir. 2003).  The Eleventh Circuit has said that "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Id*. (quoting *Lee*, 284 F.3d at 1198).  Moreover, "[u]se of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (internal quotations and citations omitted).

Thus, in order for Cheatham to defeat Redd's qualified immunity defense as to excessive force, he needed to present evidence that would create a genuine dispute of material fact as to the reasonableness of Redd's use of force on April 25, 2010.  Cheatham's material evidence is that while he was handcuffed, Redd threw him to the asphalt and struck him multiple times on and around his face, causing severe damage to his mouth.[8]  Redd claims that Cheatham had pulled a knife out of his pocket, which led to the struggle that culminated in both of them falling to the ground, but Cheatham's testimony contradicts this.  *See* Cheatham Dep. 111:15–112:23.  Thus,

---

[8] The court notes that although Cheatham suffered extensive damage to his face, this fact alone would not turn an otherwise reasonable response on behalf of Redd into excessive force. *See Logan v. Smith*, 439 F. App'x 798, 800–01 (11th Cir. 2011) ("the extent of injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances . . . [but] it is not solely determinative").

there is a genuine dispute of fact as to whether Cheatham pulled a knife on Redd and as to whether Redd threw Cheatham to the ground or he hit the ground in a struggle.  This fact dispute is material—whether Redd perceived immediate danger from Cheatham retrieving a concealed weapon goes to whether Redd was entitled to use a higher degree of force in subduing him.

Because Cheatham has failed to demonstrate a genuine dispute of material fact as to the constitutionality of his arrest on April 25, 2010, the court will grant Redd's request for qualified immunity as to Cheatham's unreasonable search and seizure claim based on the arrest itself. Because there is a genuine dispute of material fact concerning the events directly after Cheatham's arrest, however, the court will deny Redd's request for qualified immunity as to the excessive force claims contained in Counts I and II.

Cheatham also alleged in Count I of his Complaint that Redd violated his due process rights.  In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court stated that when an excessive force claim arises in the context of an arrest, "it is most properly characterized as one invoking the protections of the Fourth Amendment," rather than "the more generalized notion of 'substantive due process.'" *Id.* at 394–95.  Accordingly, Cheatham's excessive force claim under the Fourth Amendment subsumes his due process claim.

For the reasons stated above, summary judgment will be entered in favor of Redd on the unreasonable search and seizure and due process aspects of Count I and denied as to the excessive force claims in Counts I and II.

### ii. As to all other Defendants

The remaining Defendants contend that Counts I and II deal exclusively with Redd's conduct and make no reference to the behavior of Walters, Howard, or Rodgers.  Moreover, the

Defendants contend that Counts I and II raise no applicable theory of municipal liability as to the City as is required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny.  The Defendants contend that given these absences, Defendants City, Rodgers, Walters, and Howard are due summary judgment as to these Counts despite the prayer for relief's call for damages from "all defendants."  Cheatham has failed to respond to this argument, and, after considering the Defendants' argument, the court agrees with the Defendants.

Counts I and II deal exclusively with the conduct of Redd, and raise no theory of liability which could lead to the recovery of damages from any other Defendant.  Therefore, Cheatham cannot establish Counts I or II against the City, Rodgers, Walters, and Howard as a matter of law. These Defendants are due summary judgment as to Counts I and II.

### C. Count III – Municipal Supervisor Liability

In Count III, Cheatham raises a claim against the City and Rodgers for their failure to properly train, supervise, hire, and manage the officers of Tallassee's police force, and claims that such failures led to the constitutional violations which injured Cheatham.

In order for Cheatham to hold the City or Rodgers, in his official capacity, liable pursuant to § 1983 for constitutional violations, Cheatham must be able to demonstrate "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  Because the evidence in support of the latter two elements is so lacking, the court need not consider whether a constitutional violation occurred in order to rule as to Count III.

18

The Supreme Court has explained that "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). "[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *Canton*, 489 U.S. at 387; *see Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915, 917 (11th Cir. 2012) (citing *Canton* and explaining that "[a] city's failure to train a police officer can be properly thought of as the city's policy or custom in 'limited circumstances.'")

Thus, in order for Cheatham to prove his case, he must be able to demonstrate, citing facts from the record, that a municipal policy existed and that it caused the harm that he suffered. In this case, the only evidence pertaining to the City and Rodgers' alleged failure to train Tallassee's officers are the naked assertions from Cheatham found in his Complaint and echoed in his Response Brief. The factual record before the court does not demonstrate any policy or custom which caused Cheatham to suffer any constitutional violations. Because the evidence before the court does not establish the requisite elements for *Monell* liability, the Defendants must prevail on their Motion for Summary Judgment as to Count III.

### D. Counts IV, V, and VI – Intentional Torts

#### i. As to Redd

As to Cheatham's state law claims of assault, battery, and outrageous conduct against Redd, Redd asserts state-agent immunity to bar those claims. In *Ex parte Cranman*, 792 So. 2d

392 (Ala. 2000), the Alabama Supreme Court restated the rule governing state-agent immunity in

pertinent part as follows:

> A State agent shall be immune from civil liability in his or her personal capacity
> when the conduct made the basis of the claim against the agent is based upon the
> agent's . . . exercising judgment in the enforcement of the criminal laws of the
> State, including, but not limited to, law-enforcement officers' arresting or
> attempting to arrest persons.

*Id*. at 405.

The Court went on to explain that "a State agent shall not be immune from civil liability

in his or her personal capacity" when state or federal law "require[s] otherwise; or . . . when the

State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or

under a mistaken interpretation of the law." *Id.*  Redd has cited *Sheth v. Webster*, 145 F.3d 1231,

1237 (11th Cir. 1998) for the proposition that state-agent discretionary immunity applies to him

generally as a municipal peace officer.  The court agrees with Redd to that extent, but must

consider Redd's state-agent immunity defense in light of the *Cranman* exceptions.

When an Alabama court faces a party raising the state-agent immunity defense, it utilizes

a "burden-shifting process." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008).  The first

step is for the party asserting the defense to demonstrate "that the plaintiff's claims arise from a

function that would entitle the State agent to immunity." *Id.* (quoting *Ex parte Estate of

Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)).  The evidence before this court establishes that

Cheatham's claims stem from Redd's exercise of judgment as to "the enforcement of the

criminal laws of the State." *Cranman*, 792 So. 2d at 405.  Therefore, the burden shifts to

Cheatham to raise evidence which would demonstrate that "one of the two categories of

20

exceptions to State-agent immunity recognized in *Cranman* is applicable." *Kennedy*, 992 So. 2d at 1282.

To determine whether Cheatham has carried his burden, the court turns to the evidence submitted by the parties. The court finds that Cheatham has raised a genuine dispute of material fact as to whether Redd is entitled to state-agent immunity. Whether Redd's actions were willful, malicious, fraudulent, carried out in bad faith, or barred by federal or state law depends on the circumstances surrounding Cheatham's arrest on April 25, 2010—circumstances the parties dispute.

Because Cheatham has raised a genuine dispute of material fact as to whether Redd is entitled to state-agent immunity on the assault, battery, and outrageous conduct claims, the court will deny summary judgment as to Redd in his individual capacity on Counts IV, V, and VI.

## ii. As to all other Defendants

The remaining Defendants contend that Plaintiff's assault, battery, and outrageous conduct claims (Counts IV, V, and VI, respectively) fail against the City and Rodgers. Although the Complaint is ambiguous as to this fact, it appears clear to the court that Cheatham's claim against Rodgers is for his official capacity only.[9] "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th

---

[9] However, even if Cheatham was, in fact, alleging a theory of assault, battery, or outrageous conduct against Rodgers in his individual capacity, it is clear from the dearth of evidence before the court that Rodgers would be due summary judgment as to such a claim.

Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Therefore, the claims against

the City and Rodgers shall receive identical treatment.

The Defendants cite Alabama Code § 11-47-190 for the proposition that municipalities

cannot be held liable for the intentional tortious actions of their employees.  In other words,

"under § 11-47-190, a city is liable for negligent acts of its employees within the scope of their

employment, but not intentional torts of its employees."  *Brown v. City of Huntsville, Ala.*, 608

F.3d 724, 743 (11th Cir. 2010); *see Ex parte City of Gadsden*, 718 So. 2d 716, 721 (Ala. 1998)

(explaining that Alabama Code § 11-47-190 "absolves a city from liability for an intentional tort

committed by one of its agents").  The torts of assault, battery, and outrageous conduct are all

intentional torts under Alabama law.  *See Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995)

(explaining that an assault is an intentional act and further explaining that a battery is simply a

successful assault); *Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1191 (M.D. Ala. 1999)

("Intentional infliction of emotional distress, as the name indicates, involves intentional conduct,

and thus the city may not be held liable [pursuant to Alabama Code § 11-47-190].").  Therefore,

even if Redd committed the intentional torts as Cheatham alleges, Alabama Code § 11-47-190

immunity bars those claims as a matter of law against the City and Rodgers.  Accordingly, the

City and Rodgers are due summary judgment as to Counts IV, V, and VI.  The same applies to

Redd in his official capacity.

### E. Count V² – Civil Conspiracy

Cheatham's second Count V raises a claim of civil conspiracy against all Defendants, and

the Defendants contend that the intracorporate conspiracy doctrine bars this claim.  "Simply put,

under the [intracorporate conspiracy] doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc)). Moreover, the Eleventh Circuit has explained that "[t]he doctrine applies to public entities such as the City and its personnel." *Denney*, 247 F.3d at 1190.  The record evidence before the court is that all the individual Defendants in this case are city personnel, and, therefore, the Defendants cannot have committed civil conspiracy as alleged by Cheatham, as a matter of law. Accordingly, the court will enter summary judgment in favor of the Defendants as to this count.

## F. Count VII – Negligence

### i. As to Redd

To the extent that Cheatham's Count VII alleges a negligence claim against Redd, Redd cites *Ex parte Randall*, 971 So. 2d 652, 664 (Ala. 2007) for the proposition that he is immune to such negligence claims pursuant to his status as a state agent.

As the court has already explained, Redd is immune from suits that stem from his exercise of judgment in "the enforcement of the criminal laws of the State," unless Cheatham can demonstrate that Redd acted "willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  However, Alabama courts have made it clear that a state agent's immunity may not be stripped from him or her because of mere negligence. *See Randall*, 971 So. 2d at 664 ("This Court has previously held that poor judgment or wanton misconduct, an aggravated form

of negligence, does not rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in *Cranman*.") (citing *Giambrone v. Douglas*, 874 So. 2d 1046, 1057 (Ala. 2003)).  Even if the court assumes that Redd acted negligently, Cheatham cannot, as a matter of law, utilize a negligence theory to strip Redd of his state-agent immunity.

Therefore, Redd is due summary judgment in his favor as far as Count VII alleges a negligence claim against him.

ii. As to all other Defendants

Plaintiff's Count VII alleges a state law claim against the City and Rodgers as to their negligent hiring, training, and supervision of Redd.  The Defendants contend that "no Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate." *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258 (M.D. Ala. 2010).  Another federal court in this state has found that "Alabama law does not recognize a cause of action against a supervisor or municipality for negligent supervision/training." *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1311 (S.D. Ala. 2011). Cheatham has failed to provide a reason not to follow the lead of other courts, and the court finds that Cheatham's claim as to the negligent hiring, training, and supervision of Redd, Walters, and Howard against Rodgers and the City fail as a matter of law.  In addition, as far as Cheatham alleges a negligence claim against Walters and Howard, they are shielded by state-agent immunity, for the same reasons that Redd is immune.  Accordingly, summary judgment will be entered in the Defendants' favor as to this claim.

24

G. Count VIII – Negligent Infliction of Emotional Distress

The Defendants contend that Plaintiff's Count VIII as to the negligent infliction of emotional distress fails as a matter of law.  The Defendants cite *Allen v. Walker*, 569 So. 2d 350 (Ala. 1990) for the proposition that "there is no cause of action for the negligent infliction of emotional distress," and that the Alabama Supreme Court "has repeatedly stated that only intentional infliction of severe emotional distress is actionable."  *Id.* at 352.  Cheatham has not cited any law to the contrary or otherwise distinguished the *Allen* case, and, therefore, it is clear that Cheatham's negligent infliction of emotional distress claim must fail because no such claim exists under Alabama law.  Accordingly, the court will enter summary judgment in favor of all Defendants as to this claim.

**V. CONCLUSION**

For the foregoing reasons, it is ordered as follows:

1.  Defendant Redd's Motion to Strike (Doc. # 49) is hereby GRANTED in part and DENIED in part:

The motion is GRANTED to the extent it seeks to strike the portion of Cheatham's affidavit concerning his medical care and treatment after his arrest.

The motion is DENIED to the extent it seeks to strike the portion of Cheatham's affidavit concerning the events immediately surrounding his arrest—in particular, the statements regarding the amount of force used by Defendant Redd after restraining Cheatham.

To the extent the motion seeks to strike the remainder of the affidavit, the motion is DENIED as MOOT.

2.  Defendant Redd's Motion for Summary Judgment (Doc. # 37) is GRANTED in part and DENIED in part:

The motion is DENIED as to the excessive force claim brought against him in his individual capacity pursuant to 42 U.S.C. § 1983 from Counts I and II, and as to the assault, battery, and outrageous conduct claims from Counts IV, V, and VI.

The motion is GRANTED as to the unreasonable search and seizure claim and due process claim contained in Count I, the civil conspiracy claim from Count V², the negligence claim from Count VII, and the claim for negligent infliction of emotional distress from Count VIII, all as against Redd in his individual capacity.  Judgment will be entered in favor of Defendant Redd as to these claims.

The motion is GRANTED as to all claims against Redd in his official capacity.

3.  The other Defendants' Motion for Summary Judgment (Doc. # 31) is GRANTED as to all counts, and judgment will be entered in favor of Defendants City of Tallassee, Tallassee Police Department, and James Rodgers, Doug Walters, and C. S. Howard in their official and individual capacities as to all counts.

4.  This case will proceed on Plaintiff's § 1983 claims against J. L. Redd, in his individual capacity, based on excessive force, and Plaintiff's state law claims against J. L. Redd, in his individual capacity based on assault, battery, and outrageous conduct.

Done this 7th day of September, 2012.


      /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE